[Department One.—February 1, 1883.]

H. J. LAUGHLIN, APPELLANT, *v.* RICHARD WRIGHT ET AL., RESPONDENTS.

FINDINGS—INSUFFICIENCY.—When findings are not waived, and the court fails to find upon one of the material issues made by the pleadings, the judgment cannot be sustained.

PROMISSORY NOTE—INTEREST.—The fact that the payee of a promissory note has in his hands sufficient money belonging to the maker to pay the interest thereon, the money not being used for that purpose, does not prevent the note from bearing simple interest according to its terms.

HOMESTEAD—PROPERTY USED AS A HOTEL.—The mere filing of a declaration of homestead is not enough to make the property a homestead within the meaning of the statute. The *use* of the property is an important element to be considered. Where the property is primarily and chiefly used as a hotel for the accommodation of the public, it would be doing violence to the statute to regard it as a homestead, although the owner may reside there with his family for the purpose of carrying on the business.

LXIII. CAL.—8

APPEAL from a judgment of the Superior Court of the county of Santa Barbara, and from an order refusing a new trial.

The action was brought to foreclose a mortgage executed to secure the payment of a promissory note. The facts bearing upon the points decided appear in the opinion of the court.

*J. B. Hall, Richards & Boyce,* and *Garber, Thornton & Bishop,* for Appellant.

*Williams & Williams,* for Respondents.

Ross, J.—The issue raised by the pleadings as to whether the promissory note for the security of which the mortgage sought to be foreclosed was given, had been paid, was *the* issue in the case, and upon that issue there is no finding. In other respects, also, the findings do not sustain the judgment. The court found the due execution of the note and mortgage on the 20th of November, 1875. The note was for $1479, payable one year after its date, with interest at the rate of one and one half per cent per month, payable monthly, and if not so paid to be compounded monthly. The court also found that the plaintiff, who was in charge of the mortgaged premises, received from the rents thereof the sum of $3000, out of which he paid to and on account of the mortgagors $580.80. This, according to the findings, left of the rents in the plaintiff's hands $2419.20. Out of this the court below allowed the plaintiff the amount of the principal sum of the note—$1479—and gave the defendant, Mary Glascow, who was one of the mortgagors, judgment against the plaintiff for the balance of the rents, $940.20, on a counter-claim set up by her against the plaintiff.

This action on the part of the court below could only have been based on the idea that because the plaintiff had in his hands sufficient funds derived from the rents of the mortgaged premises with which to pay the interest on the note as it became due, the note ceased to bear interest. But clearly this was not so. If it be true that the plaintiff held in his hands sufficient funds of the mortgagors with which to pay the interest, and did not do so, it may be that the interest should not be compounded, but it certainly would not prevent the note from bearing simple

interest, according to its terms. To hold that it would, would be to hold that paid which was not paid.

As the case must go back for a new trial it is proper that we should indicate our views upon another point involved in the case; and to do that it is necessary to go somewhat into the facts as they appear in the record.

The defendant Mary Glascow was formerly the wife of the defendant Richard Wright, and was such at the time of the execution of the note and mortgage in suit. It was they who executed them. The mortgaged premises consist, according to the record before us, of two lots in the town of Guadaloupe, in the county of Santa Barbara, on which is erected a building called the Wright Hotel. This property was encumbered by a mortgage in favor of Schwartz & Co. for $1573.02; by a lien in favor of Schwartz, Hartford & Co. for $1100; by a lien in favor of one Douglas for $247.50, and by a mortgage in favor of the plaintiff for $1200. To get rid of these encumbrances the Wrights put the plaintiff in charge of the property, with power to rent and collect the rents, and executed to him a power of attorney appointing him their attorney in fact "to raise money on" the property "by executing our notes for such sums as to our attorney may seem proper, and on such terms, and to become payable at such time, and to draw such interest, not exceeding one and one half per cent per month, as to our said attorney may seem proper, and by executing such mortgages to secure said notes in our names, places, and stead on said real estate, and the improvements thereon or relating thereto as to our said attorney may seem proper, the money for which said notes are drawn, and which said mortgages are to secure, is to be used exclusively to pay off and settle all debts now standing against the aforesaid property." Pursuant to this power of attorney the plaintiff borrowed of the bank of San Luis Obispo the sum of $2000, for which he executed as the attorney in fact of the Wrights a promissory note secured by a mortgage on the premises. In order to give the mortgage to the bank priority the plaintiff released his own mortgage on the property. With the money the plaintiff thus got from the San Luis Obispo Bank, increased by advances made by himself, he paid off at the request of the Wrights the mortgage of Schwartz & Co., and

the liens of Schwartz, Hartford & Co., and of Douglas, aggregating $2920.52. Subsequently, to wit, on the 20th of November, 1875, the Wrights executed to the plaintiff the note and mortgage in suit for $1479, being the amount of the mortgage released by plaintiff in order to obtain the money from the bank, together with accumulated interest. When the mortgage executed to the bank became due the bank demanded the money, and in order to pay it the plaintiff borrowed, as the attorney in fact of the Wrights, of one Greening the sum of $2000, executing therefor as their attorney in fact a note secured by a mortgage on the property.

The plaintiff claims that after having paid out of the rents collected the several amounts to the Wrights, and the interest on the mortgages and the taxes and insurance on the property, there remained a balance due him, whereas, the defendant, Mary Glascow, formerly Mary Wright, now asserts that the mortgages executed by the plaintiff under the power of attorney were void, on the ground that the premises constituted the homestead of herself and her former husband. It is true that the husband — the defendant Richard Wright — filed a declaration of homestead on the premises on the 25th of May, 1874, which was prior to the execution of the power of attorney. But the mere filing of a declaration of homestead does not of itself constitute the premises embraced within it, the homestead of the declarant. The *use* of the property is an important element to be considered. From the record in this case it appears that the premises in question were used by the Wrights primarily and principally as a hotel for the accommodation of the public. It was so used by them at the time of the filing of the declaration, and until August, 1874, when, because of the embarrassed condition of their business, they left the hotel and put it in other hands. The Wrights, it is true, lived in the hotel until August, 1874, but their residence there was but incidental to the business of " running the hotel." When they became embarrassed in their business they sought a residence elsewhere, and put the hotel property in charge of others; and this was prior to the execution of the power of attorney to the plaintiff. It would be doing violence to the statute to regard property so used as a homestead, which is, and was intended to be the place where the

home is.   On this subject see *Ackley* v. *Chamberlain*, 16 Cal.
183; *Rhodes* v. *McCormick*, 4 Iowa, 374; *Gregg* v. *Bostwick*, 33
Cal. 228; *Mann* v. *Rogers*, 35 Cal. 319.

Judgment and order reversed, and cause remanded for a new
trial.

McKEE, J., and McKINSTRY, J., concurred.